Case 4:19-cv-04573 Document 73 Filed on 02/21/23 in TXSD Page 1 of 13

United States District Court
Southern District of Texas
**ENTERED**
February 21, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TERRY DON WILKERSON, TDCJ #01539842, | § § § | |
| Plaintiff, | § § § | |
| VS. | § | CIVIL ACTION NO. H-19-04573 |
| KELLY D PEGODA, *et al.*, | § § § § | |
| Defendants. | § | |

### MEMORANDUM AND ORDER

Plaintiff Terry Don Wilkerson (TDCJ #01539842), an inmate in custody of the Texas Department of Criminal Justice–Correctional Institutions Division ("TDCJ"), proceeds *pro se* and has been granted leave to proceed *in forma pauperis* in this prisoner civil rights case. Because Wilkerson is an inmate who proceeds *in forma pauperis*, the Court is required by the Prison Litigation Reform Act (the "PLRA") to scrutinize the complaint and dismiss the case, in whole or in part, if it determines that the action is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b); 28 U.S.C. § 1915(e)(2)(B).

Pending is Jasmine Fisher's Motion for Summary Judgment (Doc. No. 64), to which Wilkerson has filed a response in opposition (Doc. No. 71). Defendants Juan Miguel Hernandez, Kelly D. Pegoda, and Michael A. Thomas filed an advisory stating that genuine

material fact issues exist to preclude summary judgment on Wilkerson's claims against them. *See* Doc. No. 66 (Advisory). The Court has carefully considered the pleadings, motion, response, evidence in the record, advisory, and the applicable law and concludes as follows.

I.   **BACKGROUND**

On December 7, 2017, Wilkerson was working at the Wynne Unit tag plant in his assigned prison job. He alleges that he had previously complained many times to Defendant Kelly Pegoda, the Plant Program Manager, about his pain and had shown her his medical restrictions that indicated he could not lift more than 20 pounds. He claims that Pegoda did not help him and then got upset with him because he would not stop asking for a job change and threatened him with a disciplinary case. Doc. No. 1 at 4. Wilkerson states that as he was moving an 80-pound roll at the tag plant, his inguinal hernia gave out, causing him to lose his balance and sprain his ankle. He claims that Defendants Pegoda, Michael Thomas, and Juan Miguel Hernandez knew he had a hernia and was in pain but forced him to work beyond his medical restrictions, which caused the dangerous condition that resulted in his injury. *Id.* at 3-5.

Wilkerson alleges further that Jasmine Fisher, a licensed vocational nurse at the Wynne Unit, responded to the call for medical assistance after Wilkerson sustained his injury at the tag plant. He alleges that Fisher wheeled him to the medical department in a wheelchair and addressed his complaints about his ankle but did not look at his hernia. He claims that he told Fisher that the reason he got hurt was that his hernia came out while he

was lifting something heavy. He alleges that he was not seen for the hernia issue until four days later and that Fisher was deliberately indifferent to his serious medical need. *Id.* at 6.

Fisher moves for summary judgment on Wilkerson's medical deliberate indifference claim, asserting qualified immunity and presenting medical records in support of her motion. Wilkerson submits a response, attaching portions of his medical record showing his medical restrictions and the Risk Management Incident Report, among other medical records.

## II. LEGAL STANDARDS

### A. Summary Judgment

To be entitled to summary judgment, the pleadings and summary judgment evidence must show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56. The moving party bears the burden of initially pointing out to the court the basis of the motion and identifying the portions of the record demonstrating the absence of a genuine issue for trial. *Duckett v. City of Cedar Park, Tex.*, 950 F.2d 272, 276 (5th Cir. 1992). Thereafter, "the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact." *Hamilton v. Seque Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (quoting *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)).

The nonmovant's burden is not met by mere reliance on the allegations or denials in the nonmovant's pleadings. *See Morris v. Covan Worldwide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998); *see also Johnston v. City of Houston*, 14 F.3d 1056, 1060 (5th Cir.

1994) ("Unsworn pleadings, memoranda or the like are not, of course, competent summary judgment evidence."). Likewise, the nonmoving party "cannot satisfy this burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Freeman v. Tex. Dep't of Crim. Justice,* 369 F.3d 854, 860 (5th Cir. 2004) (citations omitted). In the absence of proof, a reviewing court will not assume that the nonmovant could or would prove the necessary facts. *See McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995), *revised on other grounds upon denial of reh'g*, 70 F.3d 26 (5th Cir. 1995). The Court may grant summary judgment on any ground supported by the record, even if the ground is not raised by the movant. *U.S. v. Houston Pipeline Co.*, 37 F.3d 224, 227 (5th Cir. 1994).

### B. Qualified Immunity

Public officials acting in the scope of their authority generally are shielded from civil liability by the doctrine of qualified immunity. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Therefore, a plaintiff seeking to overcome qualified immunity must show: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citation omitted). "Although '[the Supreme] Court's caselaw does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate.'" *Kisela v. Hughes*, 138 S. Ct. 1148,

1152 (2018) (quoting *White v. Pauly*, 137 S. Ct. 548, 551 (2017)). "An officer 'cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it.'" *Id.* (quoting *Plumhoff v. Richard*, 572 U.S. 765, 779 (2014)).

"A good-faith assertion of qualified immunity alters the usual summary judgment burden of proof, shifting it to the plaintiff to show that the defense is not available." *King v. Handorf*, 821 F.3d 650, 653-54 (5th Cir. 2016) (cleaned up). "Qualified immunity is a complete defense, and [a defendant is] entitled to summary judgment on the basis of qualified immunity unless [the plaintiff] can show triable issues as to whether [the defendant] violated a clearly established right of which a reasonable officer would have been aware." *Brewer v. Hayne*, 860 F.3d 819, 824 (5th Cir. 2017). When a defendant pleads qualified immunity, the plaintiff "must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." *Dyer v. Houston*, 964 F.3d 374, 380 (5th Cir. 2020) (cleaned up). A plaintiff cannot satisfy this burden with conclusory allegations based on speculation or unsubstantiated assertions of wrongdoing. *See Mitchell v. Mills*, 895 F.3d 365, 370 (5th Cir. 2018).

### III. DISCUSSION

#### A. Official Capacity Claims

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted

against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend XI. Federal court jurisdiction is limited by the Eleventh Amendment and the principle of sovereign immunity that it embodies. *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54-55 (1996); *see also Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100-01 (1984) (explaining that the Eleventh Amendment acts as a jurisdictional bar to suit against a state in federal court). Unless expressly waived, the Eleventh Amendment bars an action in federal court by, *inter alia*, a citizen of a state against his or her own state, including a state agency. *See Martinez v. Texas Dep't of Criminal Justice*, 300 F.3d 567, 574 (5th Cir. 2002).

As a state agency, TDCJ is immune from a suit for money damages under the Eleventh Amendment unless it is waived or abrogated by Congress. *See Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). The Eleventh Amendment also bars a recovery of money damages under 42 U.S.C. § 1983 from state employees in their official capacity. *See Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2001); *Aguilar v. Texas Dep't of Criminal Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998). Therefore, to the extent that Wilkerson asserts claims against any of the defendants in their official capacity for monetary damages, those claims are dismissed as to all defendants.[1]

---

[1] Wilkerson does not seek specific injunctive relief against any of the defendants. *See* Doc. No. 1 at 4. Therefore, the limited exception to Eleventh Amendment immunity where the relief sought is injunctive in nature and prospective in effect, does not apply in this case. *See Aguilar*, 160 F.3d at 1054 (citing *Ex parte Young*, 209 U.S. 123 (1908)).

### B. Individual Capacity Claims

#### 1. Fisher

Wilkerson alleges that Fisher was deliberately indifferent to his health needs regarding his inguinal hernia. To prevail on a claim for deliberate indifference under the Eighth Amendment, a plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Deliberate indifference is an "extremely high standard to meet," *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006), because it "requires a showing that the prison official 'knows of and disregards' the substantial risk of serious harm facing the inmate." *Morgan v. Hubert*, 459 F. App'x 321, 326 (5th Cir. 2012) (quoting *Farmer*, 511 U.S. at 837). In other words, "deliberate indifference cannot be inferred merely from negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson v. Upshur County, Tex.*, 245 F.3d 447, 459 (5th Cir. 2001).

To show deliberate indifference in the medical context, a prisoner must show that a defendant "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino v. Tex. Dep't Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). A delay in medical care can rise to the level of a constitutional violation

only if the delay is occasioned by deliberate indifference resulting in substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

Wilkerson alleges that Fisher was deliberately indifferent to his hernia injury because she refused to evaluate that injury after he asked her to look at it. He alleges that he only received proper care for his hernia injury four days later, when Nurse Practitioner Elizabeth Ngassa evaluated and treated his hernia injury and sent him for a pelvic exam and pelvic x-rays.

The medical records indicate that Fisher promptly responded to the request for medical assistance at the tag plant on December 7, 2017, bringing a wheelchair to the plant to transport Wilkerson to the infirmary.[2] The medical records reflect that Fisher addressed Wilkerson's ankle injury, evaluating whether he could move his ankle and wrapping it for support.[3] The medical records that Wilkerson submits as evidence further indicate that Fisher consulted Dr. Theodore Hall, who ordered x-rays for the ankle, and that Wilkerson received x-rays at around 2:47 p.m. on December 7, 2017, at the Wynne Unit.[4] The radiology report from the University of Texas Medical Branch in Galveston indicates that there was no fracture at that time.[5]

---

[2] Doc. No. 64-1 at 14, Defendant's Ex. A at MSJ Exh A - 013.
[3] *Id.*
[4] Wilkerson states that Fisher "lied" in her medical report by stating that he was referred to the Estelle Unit for x-rays, but that he actually got x-rays at the Wynne Unit. Doc. No. 71 at 5. He reports that he asked the x-ray doctor whether he would see another doctor, and that doctor stated, "oh yes." *Id.* The records indicate that a radiologist (Dr. Usama Salem) from UTMB Galveston reviewed his x-rays and issued a report. *See id.* at 19 (Plaintiff's Ex. C).
[5] *Id.* at 19.

The medical records also show that on November 15, 2017, less than a month before his injury, Wilkerson saw Dr. Hall regarding his hernia and was provided a hernia belt and medical restrictions that he was not supposed to lift more than 20 pounds or stand too long.[6] The nursing notes from December 7, 2017, indicate that Wilkerson was wearing his hernia belt and that Fisher did not see any protrusion but provided Wilkerson with an ice pack.[7] In particular, Fisher wrote the following in her nursing notes:

> 12:05 p.m. [Patient] is able to move his ankle up/down-pedal pulses present. [Patient] has swelling noted on top/[right] side of [right] foot. [Patient] is [complaining of] pain to [right] ankle 8/10 and burning to [right] groin area. [Patient] has on hernia support – no [pro]trusion noted. Ice pack given. [Patient] is elevating [right] foot at this time. Foot wrapped for support consulted with Dr. T. Hall MD.
>
> 12:10 p.m. Consulted with Dr. T. Hall MD [verbal order] to splint foot and send to Estelle RMF for x-rays – security notified.[8]

Wilkerson alleges that Fisher lied about assessing his hernia, but he does not dispute that he was wearing the hernia belt or support prescribed by Dr. Hall at the time he was injured. He also states that he was never sent to Estelle Unit Regional Medical Facility for x-rays, but he acknowledges that he received x-rays on December 7, 2017, at the Wynne Unit.

Although Wilkerson asserts that Fisher "lied" or falsified the medical record regarding evaluating his hernia, he offers nothing to substantiate this assertion. The medical records refute his claim for medical deliberate indifference and are supported by

---

[6] Doc. No. 71 at 21 (Plaintiff's Ex. E).
[7] Doc. No. 64-1 at 14.
[8] *Id.*

sufficient business record affidavits. Therefore, his unsubstantiated allegations are insufficient to refute the evidence in the medical records to raise a fact issue on summary judgment. *See, e.g., United States v. Towns*, 718 F.3d 404, 409-10 (5th Cir. 2013); *accord Mathis v. Alexander*, 49 F.3d 728, 1995 WL 103646 (5th Cir. March 3, 1995) (holding that the plaintiff's claims that the medical records were falsified lacked merit where he did not offer any evidence to support that claim); *see also Knighten v. Ott*, 69 F. App'x 657, 2003 WL 21355964 *1 (5th Cir. May 2003) (holding that the plaintiff's "conclusional assertions . . . that his medical records were falsified are insufficient to defeat the medical defendants' summary-judgment evidence or to create a genuine issue of material fact") (unpublished); *Tijerina v. Stanley*, No. 5:16-cv-102, 2018 WL 8550762, at *16 (E.D. Tex. Dec. 3, 2018), *rec. adopted*, 2019 WL 1396964 (E.D. Tex. Mar. 28, 2019) (holding that the plaintiff's allegations that the medical record was falsified were unsubstantiated and were not competent evidence to defeat summary judgment).

The competent summary judgment evidence in the record indicates that Fisher observed that Wilkerson was wearing a hernia support and noted that there was no protrusion at the time she evaluated him for his injuries. The evidence also indicates that she provided Wilkerson with an ice pack and consulted with Dr. Hall, who referred Wilkerson for x-rays that were taken that same day. Thus, Fisher provided some medical treatment for Wilkerson's hernia condition by noting that he had a hernia support in place with no protrusion, consulting with Dr. Hall, and giving him an ice pack. *See Petzold v.*

*Rostollan*, 946 F.3d 242, 250-51 (5th Cir. 2019) (holding that a cursory instruction to ice an injury was "medical treatment" sufficient to defeat a claim of deliberate indifference).

In *Petzold*, the nurse did not evaluate the plaintiff's broken ankle and perfunctorily told him to put ice on it; the plaintiff argued that the nurse was deliberately indifferent because the "prescribed 'treatment' was not based on an evaluation, lacked specific instructions, and was ineffective." *Id.* at 250. Yet, "because medical treatment was provided, even if it was negligent, disagreed-with, and based on a perfunctory and inadequate evaluation, it was not denied." *Id.* The Fifth Circuit explained, "under governing precedent, imperfect treatment does not equal denied treatment." *Id.* The court in *Petzold* reiterated that "a disagreement with recommended treatment is generally insufficient to show deliberate indifference." *Id.* at 250-51 (citing cases).

Like the prisoner in *Petzold*, Wilkerson does not raise a fact issue that Fisher was deliberately indifferent to his medical needs regarding the initial medical consultation about his injuries or any alleged delay in his treatment. *Id.* (holding that because the defendant provided some, albeit imperfect, medical treatment, the plaintiff did not raise a fact issue on an essential element of denying or delaying medical care to show medical deliberate indifference); *see also Baughman v. Hickman*, 935 F.3d 302, 309-10 (5th Cir. 2019) (holding that the plaintiff's disagreement with the nurses' decision that he did not need further medical attention was insufficient to state a claim for deliberate indifference).

The record indicates that Fisher provided some treatment to Wilkerson for his injuries, including his hernia injury. There is no evidence to show that Fisher was aware

of facts to show a substantial risk of serious harm and that she actually drew the inference that Wilkerson had a serious medical need regarding his hernia, where she noted that he had a hernia support in place and did not see any protrusion. In sum, Wilkerson does not present evidence to raise a fact issue that Fisher refused to treat him, ignored his complaints, or otherwise acted with deliberate indifference to his serious medical needs. *Gobert*, 463 F.3d at 346. Therefore, Wilkerson does not show that Fisher violated his constitutional rights in connection with providing him medical care on December 7, 2017.[9]

Further, Fisher asserts qualified immunity. As explained above, Wilkerson does not raise a fact issue that Fisher violated his constitutional rights. Therefore, he does not meet his burden to overcome Fisher's entitlement to qualified immunity, and the claims against her must be dismissed on summary judgment.

### 2. Pegoda, Hernandez, and Thomas

Pegoda, Hernandez, and Thomas filed an advisory stating that fact issues preclude summary judgment on Wilkerson's claims against them for deliberate indifference. Therefore, Wilkerson's claims against Pegoda, Hernandez, and Thomas, in their individual capacities, remain for adjudication.

---

[9] Wilkerson also generally alleges that Physician Assistant Kate E. Christopher refused to examine his hernia on December 7, 2017. Christopher has not been served and has not appeared in this case. The medical records submitted by both Fisher and Wilkerson lack any mention of Christopher, and Wilkerson's allegations against her are conclusory. Therefore, the claims against Christopher will be dismissed without prejudice under 28 U.S.C. §§ 1915A, 1915(e)(2)(B) (providing that a court may dismiss a claim from a prisoner proceeding *in forma pauperis* at any time if the Court concludes that the plaintiff fails to state a claim for which relief may be granted).

## IV. CONCLUSION AND ORDER

Based on the foregoing, the Court **ORDERS** as follows:

1. Defendant Jasmine Fisher's motion for summary judgment (Doc. No. 64) is **GRANTED**, and the claims against her are **DISMISSED with prejudice**.

2. To the extent Wilkerson asserts official capacity claims against Kelly D. Pegoda, Juanmiguel A. Hernandez, and Michael A. Thomas, those are **DISMISSED** as barred by the Eleventh Amendment immunity.

3. The claims against Defendant Kate E. Christopher are **DISMISSED without prejudice** under 28 U.S.C. §§ 1915A(b), 1915(e)(2)(B).

4. **Wilkerson's deliberate indifference claims against Pegoda, Hernandez, and Thomas, in their individual capacities, remain for adjudication.**

5. The portion of the Court's February 25, 2022, Order that denied Wilkerson's motion for appointment of counsel (Doc. No. 61 at 4 ¶4) is **VACATED**, and Wilkerson's motion for appointment of counsel (Doc. No. 54) is **GRANTED**.

6. This case is **STAYED** and **ADMINISTRATIVELY CLOSED** pending the appointment of counsel. Once the Court locates an attorney who is willing to take this case, it will enter a separate order reopening the case, designating counsel of record for Wilkerson, and setting this case for a pretrial scheduling conference.

The Clerk will enter this Order and send a copy to the parties.

SIGNED at Houston, Texas on this 21st day of February 2023.

ANDREW S. HANEN
UNITED STATES DISTRICT JUDGE